KLEINFELD, Circuit Judge.
I respectfully dissent from the portion of the order concluding that the plaintiffs have standing under Article III. Because the plaintiffs lack standing, the case should be dismissed. However, assuming that there is standing, I concur in the portions of the order certifying questions to the Supreme Court of California.
The reason that the plaintiffs lack standing to sue the City and the Boy Scouts is that their only claimed harm from the Boy Scouts’ religiosity is that it offends them. Neither they nor their sons have ever sought to join the Boy Scouts or use the facilities managed by the Boy Scouts. Although the plaintiffs are offended that, at some times of the year, a lot of (presumably reverent) Boy Scouts will be there, plaintiffs do not claim that they have ever been excluded, nor even that they want to camp at the same place, or camp at all. If the Boy Scouts were a church (which they are not), plaintiffs would be like someone offended because it was harder to get reservations at a hotel that hosts the church group’s annual convention, even though (1) they could have still made reservations, and (2) they did not want to stay at a hotel that hosted the church group.
The complaint avers that the lesbian plaintiffs “refuse” to participate in Boy Scouts and “will not permit” their son to participate because of what they understand to be the Scouts’ views on sex. The same is true of the agnostic plaintiffs on account of the Scouts’ views on God. They do not say that they or their son has been or will be barred from use of the San Diego facilities at issue. They allege no concrete personal injury[1] to themselves at all, beyond the offense to their sentiments. In their declaration, the plaintiffs say they “avoid” the Boy Scout area of Balboa Park because they “feel a strong aversion” to it. What plaintiffs do not say is that they ever tried to get reservations in the Boy Scout area of the park, or that they ever even wanted to. Rather, they “refuse to apply *1050 for use of the property” because they “feel degraded.”
The closest plaintiffs get to claiming any “concrete injury” to themselves is suggesting that what they feel “degraded” by is that the Boy Scouts block out some time for Boy Scout activities, and that their reservations would have to be scheduled around Boy Scout reservations. But they do not claim that they have ever tried to make reservations, or ever would try to make reservations in the areas to which they “feel a strong aversion,” or that, if they did they try, they could not get such reservations.
In their declaration, the lesbian plaintiffs say “we would not even contemplate affiliating ourselves with the Scouts, just as a Jewish person would not affiliate with a neo-Nazi group.” There is nothing neo-Nazi about the Boy Scouts. Most Jews would also decline to affiliate with a perfectly well behaved Episcopalian church, Democrats would decline to affiliate with the Republican Club and Republicans would decline to affiliate with the Democratic Club. Not wanting to affiliate does not imply that the group has harmed any legally protected interest of those who decline to join or be around them.
Likewise, the agnostic parents “purposely avoid” the Boy Scout area, but do not claim that they are excluded by anything but their own feelings. They claim that they would like to have their daughter participate in aquatic programs “but ... object to having them exposed to the Boy Scouts’ religious tenets and activities.” They too allege no “concrete injury” beyond the one to their feelings. They claim that their use is “inferior” because the Boy Scouts have the “role of gatekeeper.” That would matter, if they sought to get through the gate. But they do not allege that they ever have or ever would try to pass through the gate, or that the Boy Scouts would keep them out if they did. They do not say that they could not sign their daughter up, just that they don’t want to because she would be exposed to Boy Scout thinking.
The lesbian and agnostic plaintiffs’ declarations establish that they have strong negative feelings about the Boy Scouts. But feelings do not confer standing.[2] Federal courts have no judicial power in the absence of a “case or controversy,”[3] which does not exist unless the plaintiffs have “standing.”[4] And standing requires a “concrete injury,”[5] which must be “actual *1051 or imminent, not conjectural or hypothetical.” [6]
This case is much like Valley Forge Christian College v. Americans United for the Separation of Church and State,[7] in that the plaintiffs have not established a concrete injury. In Valley Forge, the federal government had given away public land to a church college, treating the public benefit of the church college as a 100% setoff to the property’s appraised value.[8] The plaintiffs, who did not share the religious views of the church, objected.[9] After disposing of plaintiffs’ claim to have standing as taxpayers,[10] the Court went on to address plaintiffs’ claim to have standing because of the injury to the plaintiffs’ right to have the government refrain from violating the Establishment Clause.[11] In the course of rejecting this claim, the Court squarely rejected the sufficiency of “psychological injury” of the sort claimed by the plaintiffs in the case at bar:
They fail to identify any personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees. That is not an injury sufficient to confer standing under Art. Ill, even though the disagreement is phrased in constitutional terms.... [Standing is not measured by the intensity of the litigant’s interest or the fervor of his advocacy.[12]
We are bound by the Supreme Court’s holding in Valley Forge that psychological injury of this sort is insufficiently concrete to confer standing.
The way that the plaintiffs establish standing to the majority’s satisfaction is by showing that if they wanted access to the Boy Scout areas of Balboa Park, they would be subject to priorities in favor of the Boy Scouts.[13] This is not a persuasive position factually, at least on the record before us. True, as the majority says, the Boy Scouts have management offices at the park. But management and maintenance buildings would be closed to the general public no matter who did the management. True, as the majority says, the Boy Scouts block out reservations for certain times. But the record establishes that non-Boy Scouts can use the park even at those times. The pool is occasionally blocked off, but every public pool is unavailable to all the people some of the time, and some of the people all the time, as during girls’ swim, boys’ swim, adult swim, physical rehabilitation swim, town swimming lessons, and “everybody out of the pool” time.
For purposes of argument, though, let us assume that during certain desirable times, no one but Boy Scouts can use at least some of the facilities. According to *1052 the record, even during the Boy Scouts’ special camping periods or swim periods, portions of the facilities are blocked from Boy Scout use and reserved for the general public, although the pool becomes unavailable at times. The most that the plaintiffs complain of is that ¿/they wanted to go to the Boy Scouts area or the pool, they could not do so on equal terms with the Boy Scouts. But they do not want to go to these places. If the Boy Scouts really do exclude non-Scouts at desirable times, there ought to be some potential plaintiffs who have been excluded or would be if they tried to get in, and would therefore have suffered concrete injury from the Boy Scouts’ gatekeeping role. These plaintiffs are not among them.
These plaintiffs have never tried, and do not want to try, to use the facilities so long as the Boy Scouts are there. They find the Boy Scout area “offensive,” “stressful,” and “not a safe place.” They do not, and would not, go to the pool, because they don’t want their children “exposed to the Boy Scouts’ religious views.” They concede that “[e]ven if the City put on a ... program there, [they] wouldn’t send their children.” The consequence of the Boy Scouts’ presence is not that the plaintiffs cannot go there, but rather that they do not want to. That is precisely the psychological harm that Valley Forge holds is inadequate to establish standing.
Though unequal treatment is an injury,[14] standing requires a concrete injury to the challenger. That means not only that there is unequal treatment, but also that the unequal treatment affects the challenger. The plaintiffs’ declarations do not establish that they have been or would be victimized by the alleged inequality. I do not think that the record establishes concrete unequal treatment, because the Boy Scouts assiduously avoid excluding non-Scouts even during peak Scout times (except for the swimming pool for three weeks). The plaintiffs allegations to the contrary are “no more than an ingenious academic exercise in the conceivable.”[15] In essence, their argument is an argument contrary to fact: if they wanted to use the facilities that they do not want to use because they do not like being around the Boy Scouts, they might have to schedule their use of the park around the Boy Scouts’ times, if the Boy Scouts’ reservation priority made space unavailable, which it doesn’t.
It is not a concrete harm that someone else gets to go first if the plaintiff does not want to go at all. “The federal courts were simply not constituted as ombudsmen of the general welfare.”[16] For us to have a “case or controversy,” a sine qua non of our power to do anything about a wrong, the plaintiff must suffer a “concrete injury” on account of the wrong. Inequality in making campground reservations and in gaining access to a pool does not injure someone who does not want to camp or swim there because of the unpleasantness of being in the presence of people with contrary beliefs about sex or God. The plaintiffs’ injury, that if they wanted to use the Boy Scout area they would have to do so on unequal terms, is too “conjectural or hypothetical” to confer standing.[17]
*1053 These plaintiffs complain about not wanting to go to a place where the Boy Scouts are, not about being unable to get in. In the cases of ours involving crosses on public land that the majority cites, the plaintiffs actually would visit and drive in locations but for the religious symbols.[18] Here, the most the plaintiffs say is that if the Boy Scouts had different views, the plaintiffs would “like to be able to” camp in the Boy Scout area, not that they would; the declarations do not even claim that plaintiffs are campers (or swimmers). Lawyers write these affidavits carefully, so if the plaintiffs could truthfully say they would camp, not just that they would like to be able to camp, they would have said so.
Difficulty in getting a reservation at a hotel because of a convention is not a concrete injury to a person who does not want to be there because the guests at the convention are repulsive to him. For much the same reason, plaintiffs have not shown that they suffered or were in danger of imminently suffering a concrete injury.

. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ("[PJlaintiff must have suffered an 'injury in fact' — an invasion of a legally protected interest which is ... concrete and particularized. ...”).

. See Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 225, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) (“We have no doubt about the sincerity of respondents’ stated objectives and the depth of their commitment to them. But the essence of standing ‘is not a question of motivation but of the possession of the requisite ... interest that is, or is threatened to be, injured by the unconstitutional conduct.’ ”) (quoting Doremus v. Board of Education, 342 U.S. 429, 435, 72 S.Ct. 394, 96 L.Ed. 475 (1952)). See also Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 486, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)(“ '[TJhat concrete adverseness which sharpens the presentation of issues,' Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), is the anticipated consequence of proceedings commenced by one who has been injured in fact; it is not a permissible substitute for the showing of injury itself.’’)

. See U.S. Const, art. Ill, § 2, cl. 1.

. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

. Baranowicz v. Commissioner of Internal Revenue, 432 F.3d 972, 973 (9th Cir.2005) (quoting Knisley v. Network Associates, Inc., 312 F.3d 1123, 1126 (9th Cir.2002)(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992))).

. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

. Id. at 467-68, 102 S.Ct. 752.

. Id. at 469, 102 S.Ct. 752.

. Id. at 482, 102 S.Ct. 752.

. Id. at 482-487, 102 S.Ct. 752.

. Id. at 485-86, 102 S.Ct. 752. The Supreme Court so concluded despite the fact that some of the plaintiffs lived near the college. It noted that proximity was not "sufficient to establish that [a plaintiff] has suffered, or is threatened with, an injury other than their belief that the transfer violated the Constitution.” See id. at 487, n. 23, 102 S.Ct. 752.

. Order 19472-74.

. Order 19474 (quoting Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993)).

. United States v. S.C.R.A.P, 412 U.S. 669, 688, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1972).

. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 487, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (''[P]laintiff must have suffered an *1053 'injury in fact' — an invasion of a legally protected interest which is ... actual or imminent, not conjectural or hypothetical. "Xquota-tions omitted).

. See Buono v. Norton, 371 F.3d 543, 546-47 (9th Cir.2004) (Plaintiff "regularly visits the Preserve” and "will tend to avoid Sunrise Rock on his visits as long as the cross remains standing, even though traveling [that way] is often the most convenient means of access to the Preserve.”); Ellis v. City of La Mesa, 990 F.2d 1518, 1523 (9th Cir.1993) ("[The plaintiffs] avoid two public parks in San Diego which they would, otherwise nse.”)(emphasis added).